5271-1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORSEPLAY INFLATABLES, LLC, a ) CASE NO.:
Florida limited liability company, )
                                  )
             Plaintiff, )
                                  )
v. )
                                  )
NINO RUISI, )
                                  )
             Defendant. )
_____ )

**COMPLAINT**

Plaintiff, Horseplay Inflatables, LLC, hereby sues Defendant, Nino Ruisi, and states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    This is an action for, among other things, damages in excess of $75,000.00 (exclusive of interest, costs and attorneys' fees), injunctive relief, statutory attorneys' fees and costs, and other appropriate relief arising from Defendant's wrongful conduct—namely common-law trademark infringement and passing off, false designation of origin in violation of the Lanham Act, unfair competition, defamation per se, trade libel, tortious interference with business relationships, and deceptive and unfair trade practices under Florida law.

2.    Plaintiff is a Florida limited liability company organized and existing under the laws of the State of Florida and having its principal place of business in Pinellas County, Florida.

3.     Defendant is a citizen of New York and is otherwise *sui juris*.  This Court has personal jurisdiction over Defendant under Florida's Long-Arm Statute because Defendant committed tortious acts directed at and causing injury to Plaintiff within the State of Florida. *See* § 48.193(1)(a)(2), Fla. Stat. (2025)

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1125(a), and pursuant to 28 U.S.C. § 1367(a), because the state law claims asserted are so related to the federal claims that they form part of the same case or controversy.

5.     Venue is proper in this judicial district according to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

6.     All conditions precedent to the commencement of this action, if any, have been satisfied, discharged, or waived.

## FACTS COMMON TO ALL COUNTS

7.     On October 1, 2021, Plaintiff filed Articles of Organization with Florida's Secretary of State, Division of Corporations and has since been operating out of Florida and selling its products nationwide.  A true and correct copy of the Articles of Organization is attached hereto as **Exhibit "A."**

8.     After purchasing inflatable products in 2023, Defendant complained about the products and demanded additional units beyond the per-product limits imposed by Plaintiff. He refused to cooperate with Plaintiff's refund

procedures. Despite communications from the company to rectify the situation, Defendant persisted in demanding more merchandise, leading Plaintiff to cease contact. Thereafter, Defendant circumvented normal complaint routes and escalated the matter by launching a sustained campaign of harassment, including threats of physical violence directed at Plaintiff's officers.

9.     Beginning in mid-2023, Defendant created and began operating an online storefront using the name "Horseplay Toys"—the exact same trade name that Plaintiff has used as its storefront brand since at least 2018 and under which it has marketed its products on the social-media platform X (formerly Twitter) since 2015.   Defendant's adoption of Plaintiff's trade name was not limited to one website.   Defendant registered and operates multiple domains, including: *https://horseplay.cc*, *https://horseplay.toys*, *https://horseplay.xyz*, *https://horseplaytoys.com*,                          *https://horseplaytoys.vip*, *https://horseplaytoys.xyz*, *https://horseplayus.com*, *https://pooltoy.xyz*, *and https://pooltoypopper.com*.     These sites link to one another and collectively market inflatable products that are nearly identical in style and appearance to Plaintiff's products. The websites replicate Plaintiff's trade dress and product descriptions and are clearly designed to confuse customers into believing they are affiliated with Horseplay Toys. Defendant has also offered for sale copies of Plaintiff's known Horseplay Toys products produced by a factory previously utilized by Plaintiff, further demonstrating his intent to trade off Plaintiff's goodwill and deceive customers.  A true and correct copy of each of the websites' print outs is attached hereto as **Composite Exhibit "B."**

10.    Defendant has published statements across various platforms, including Trustpilot, Reddit, FurAffinity, and the social-media platform X (formerly Twitter), that falsely accuse Plaintiff and Dr. Petkiewicz of fraud, theft, harassment, lying under oath, unsafe business practices, and knowingly selling products that have caused personal injuries after ignoring customer reports.  For example, on X Defendant posted that Plaintiff and Dr. Petkiewicz "belong in prison for fraud, theft, harassment, lying under oath and knowingly selling products that caused multiple personal injuries after many reports [they] ignored," and on FurAffinity he accused Plaintiff of running a "cult," refusing to refund payment for defective products, and causing financial harm and psychological distress. Defendant has also made multiple attempts to impersonate Plaintiff's business across social media and to sell falsely advertised or spoofed versions of Plaintiff's products; for example, he created a Twitter handle "@HorseplayLLC" where he claimed that Plaintiff had "gifted" him the designs and thanked "horseplay-inflatable" for a "first run" of products. In communications with a factory previously used by Plaintiff, Defendant admitted spreading false information about Plaintiff and encouraged the factory to produce copies of Plaintiff's designs while instructing them not to inform Plaintiff. Such statements and impersonation efforts are intended to mislead the public and harm Plaintiff's business reputation.  A true and correct copy of the published statements is attached hereto as **Composite Exhibit "C."**

11.    On May 30, 2025, Defendant filed a complaint with the Better Business Bureau (ID #23297120), alleging that Plaintiff "sold adult items to

children," sold defective products, and harassed him "across multiple counties and addresses." A true and correct copy of the Better Business Bureau Complaint is attached hereto as **Exhibit "D."**

12.    In online reviews dated between December 2022 and February 2025, Defendant used multiple aliases to leave scathing 1-star reviews of Plaintiff's business, accusing the company of fraud, theft, and abuse of customer data. These statements are defamatory *per se* because they falsely impute criminal conduct and are harmful to the business's reputation in its trade. A true and correct copy of the online reviews is attached hereto as **Composite Exhibit "E."**

13.    Defendant placed hundreds of fraudulent orders on Plaintiff's online store using false names and emails. These orders—often 10 per day and on most days (and by Defendant's own admission at least eight per day)—flood Plaintiff's system and materially disrupt business operations. Despite efforts to block them, the Defendant circumvents filters using anonymized and disposable accounts. A true and correct copy of Defendant's admission is attached hereto as **Exhibit "F."**

14.    Plaintiff operates its e-commerce storefront through Shopify, a widely used third-party platform for managing online retail sales. The store operates under the name "Horseplay Toys" and is managed by authorized staff using secure login credentials.

15.    In or around April and May 2025, Defendant began publicly posting on social media platforms—such as Twitter/X and Reddit—accusing Plaintiff of fraud, impersonation, and criminal conduct, and tagging Shopify's official

support accounts in an apparent attempt to provoke administrative action against Plaintiff's store. A true and correct copy of the social media posts is attached hereto as **Composite Exhibit "G."**

16.    On July 22, 2025, Plaintiff sent a cease-and-desist letter to Defendant, demanding that he cease and desist from all conduct directed at Plaintiff, including any actions, communications, or interference involving the company's business operations, employees, contractors, artists, vendors, or customers. A true and correct copy of the Cease-and-Desist Letter is attached hereto as **Exhibit "H."**

17.    In a response email dated July 28, 2025, Defendant acknowledged receiving a cease-and-desist letter from Plaintiff but dismissed its contents and persisted in accusing the business of wrongdoing, characterizing himself as the rightful operator of "Horseplay," and stating that he would not stop operating under that name.

18.    Defendant also posted on Reddit's r/shopify forum, falsely accusing Plaintiff of impersonating another company, committing international fraud, and operating without permits. He claimed to have reported Plaintiff to Shopify's legal team, the BBB, Florida's Attorney General, and German consumer protection agencies.

19.    In communications with Shopify, Defendant appeared to intentionally blur the distinction between his own store ("horseplaytoys"), his primary domain (horseplaytoys.com), and Plaintiff's store ("Horseplay Toys") (horseply-toys.com), potentially as a strategy to provoke Shopify to investigate or

restrict Plaintiff's account by exploiting the similarity in names.

20.    Plaintiff expressed concern to Shopify that Defendant may have engaged in social engineering tactics to gain access to confidential store information or influence Shopify representatives.  Plaintiff noted that a customer profile matching Defendant's name appeared on many fraudulent, intentionally canceled orders, thus supporting the inference that Defendant was attempting to manipulate platform trust signals.

21.    Defendant has also harassed Plaintiff's affiliated artists and contractors, as well as the company's customers.  Starting in early 2023, he began sending hostile messages and attacking Plaintiff's customers on social media. His harassing communications intensified in February 2025, when he lobbied convention organizers to have Plaintiff banned as an attendee or exhibitor and escalated his threats against collaborators and supporters.  He openly admits in private and public correspondence that these actions are retaliatory in nature.

22.    Plaintiff collaborates with several independent artists to design, market, and sell its custom inflatable products.  Among the artists publicly affiliated with Plaintiff are Lizet, Brushfire, and Gott & Gilz—each of whom has contributed original designs that are featured prominently on Plaintiff's website and in its marketing materials.

23.    On information and belief, Defendant was aware of Plaintiff's commercial relationships with these artists and, beginning in or around February 2025, engaged in a targeted pattern of harassment intended to damage

those relationships and deter the artists from working with Plaintiff. On April 29, 2025, Defendant sent an e-mail from the address "info@horseplaytoys.com" expressly declaring his intent to harass Plaintiff's artists and to disrupt their collaborations with Plaintiff. Defendant subsequently escalated his campaign by sending one artist a modified version of Plaintiff's cease-and-desist letter and threatening legal action for collaborating with Plaintiff. He later boasted of this plan in a checkout note for order no. 10239 dated November 28, 2025, indicating that his retaliation was motivated by her willingness to provide evidence against him. A true and correct copy of the April 29, 2025, email is attached hereto as **Exhibit "I."**

24.    On or about November 8, 2025, Defendant sent an email to Lizet, an artist whose original inflatable designs, such as "Snep" and "Cougar," are featured by Plaintiff, stating: "Hope you go to prison for fraud for a long time." The email was sent from the address "x@pooltoypopper.com" and referenced Defendant's own infringing website, "horseplaytoys.vip," indicating the communication was directly related to the ongoing business dispute. A true and correct copy of the November 8, 2025, e-mail to Lizet is attached hereto as **Exhibit "J."**

25.    On the same day, Defendant sent a separate e-mail to the artist Brushfire, stating: "Hope you go to prison for a long time for fraud and hp stalking customers ... you belong in hell for this and I hope it follows you for the rest of your pathetic sell out life." This communication was likewise unsolicited, hostile, and clearly aimed at intimidating Brushfire and pressuring her to sever

ties with Plaintiff.  A true and correct copy of the November 8, 2025, e-mail to Brushfire is attached hereto as **Exhibit "K."**

26.    Defendant also contacted Gott & Gilz, a designer known as Roman Gilz, on multiple occasions.    In one e-mail, Defendant implied that Gilz was complicit in fraudulent conduct and warned him against associating with Plaintiff.  A true and correct copy of the Roman Gilz correspondence is attached hereto as **Composite Exhibit "L."**

27.    In a second e-mail to Gilz dated November 13, 2025, Defendant escalated his claims by accusing Plaintiff of "art theft" and "terrible behavior," as well as falsely asserting that Plaintiff had "lost in court 4 times"—a baseless and defamatory claim.

28.    Notably, Defendant later admitted that his conduct was intentional and retaliatory.  In an email dated September 11, 2025, he stated: "Wrote out 4 emails tn [sic] specifically to 'your artists' to give them the info contained in horseplaytoys.vip against you for this 'stunning court case' you basically lost at this point."  A true and correct copy of the September 11, 2025, email is attached hereto as **Exhibit "M."**

29.    Since at least February 2025, Defendant's communications were not isolated or accidental: they formed part of a deliberate and malicious campaign to damage Plaintiff's brand by undermining its collaborations, coercing artists into abandoning their commercial relationships, and chilling future artistic partnerships.

30.    Defendant continues to sell competing products under a nearly

identical name, impersonate Plaintiff online, publish defamatory content, and intentionally interfere with Plaintiff's business relationships and economic advantage. The cumulative effect of Defendant's actions has caused reputational damage, loss of customer trust, and significant financial harm to Plaintiff.

31.    Although Defendant resides in New York, he has engaged in a campaign of online harassment and unfair competition specifically targeting Plaintiff in Florida.

32.    The harm from these actions was and continues to be felt in Florida, where Plaintiff maintains its operations, and where its brand and business relationships have been damaged.

33.    Defendant's actions were purposefully directed at Florida and were designed to cause harm in Florida. Accordingly, Defendant should reasonably anticipate being haled into a Florida court, and the exercise of jurisdiction over him comports with constitutional due process requirements.

34.    Plaintiff has retained The Carlin Law Firm, PLLC, to represent it in this action and has agreed to pay a reasonable fee for the representation.

**COUNT 1**
**COMMON LAW TRADEMARK INFRINGEMENT AND PASSING OFF**

35.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

36.    Plaintiff has continuously used the trade name "Horseplay Toys" in commerce since at least 2015.

37.    Plaintiff has built substantial goodwill and brand recognition under the "Horseplay Toys" name among customers, collaborators, and the public.

38.    Defendant subsequently created and began operating a competing business under the same "Horseplay Toys" trade name that Plaintiff uses which is causing confusion in the marketplace.  Defendant did not limit his misuse to a single site; he registered and captured similar names on at least fifteen different social-media platforms and websites and lodged false intellectual-property claims in order to displace Plaintiff's accounts and misdirect customers.  For example, Plaintiff's Ko-Fi account was briefly suspended due to Defendant's false IPR complaints, temporarily preventing customers from finding the legitimate Horseplay Toys account.  Defendant has publicly admitted that he manipulates search engine optimization (SEO) techniques to direct internet traffic away from Plaintiff's sites and toward his competing storefronts. These tactics amplify confusion and demonstrate Defendant's bad-faith intent to trade on Plaintiff's goodwill.

39.    Defendant's use of the similar name and visual presentation was intended to deceive consumers and create confusion regarding the source of the products and information about them.  Defendant has further attempted to incite backlash against Plaintiff by using the "Horseplay Toys" name in provocative or inciting posts that encourage customers and industry participants to shun Plaintiff.

40.    As a result of Defendant's actions, actual confusion has occurred in the marketplace, and Plaintiff has suffered reputational damage and lost profits.

41.    In addition to compensatory and special damages, Plaintiff should be awarded punitive damages to punish Defendant and to deter others from acting with the same kind of malice, moral turpitude, willfulness, wantoness, and reckless indifference to the rights of others.    Defendant had actual knowledge of the wrongfulness of its conduct and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A.    Enter a temporary injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from using the word "Horseplay," "Horseplay Toys," or any confusingly similar name, mark, domain, or trade dress in connection with the sale, offering for sale, promotion, or advertising of inflatable products;

B.    Enter a permanent injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from using the word "Horseplay," "Horseplay Toys," or any confusingly similar name, mark, domain, or trade dress in connection with the sale, offering for sale, promotion, or advertising of inflatable products;

C.    Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages; consequential (special) damages, including lost profits; punitive damages; prejudgment interest; and costs caused by Defendant's conduct; and

D.    Award such other and further relief in law or equity as this Court deems just and proper.

## COUNT 2
## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)

42.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

43.    Plaintiff is the senior user of the "Horseplay Toys" name and associated branding in interstate commerce.  Since at least 2018, Plaintiff has continuously marketed, advertised, and sold its uniquely designed inflatable products across the United States under the trade name "Horseplay Toys."

44.    As a result of its continuous and widespread use in commerce, Plaintiff has developed common law trademark rights in the "Horseplay Toys" name and brand identity.

45.    Plaintiff's branding and trade dress are distinctive in the relevant market and have become closely associated with a single source: Horseplay Toys.

46.    Defendant has used the exact name "Horseplay Toys" in commerce to promote a competing business, causing consumer confusion.

47.    Plaintiff's use of the trade name "Horseplay Toys"—and its associated business name "Horseplay Inflatables"—in interstate commerce predates Defendant's adoption of the same or any confusingly similar designation. Plaintiff has marketed its products under the Horseplay Toys name since at least 2018 (and under the Horseplay Toys handle on social media since 2015), long before Defendant misappropriated the name for his competing

enterprise.

48.     Defendant marketed, promoted, and sold similar inflatable products under the name "Horseplay Toys" using similar designs and website layout.

49.     Defendant is a former customer of Plaintiff who, after purchasing inflatable products, attempted to pressure Plaintiff into selling him additional units beyond the per-product limits that Plaintiff imposed and refused to allow Plaintiff's refund procedures to be completed.  When Plaintiff declined to make concessions outside of its policies, Defendant retaliated by launching a competing business under the identical "Horseplay Toys" name.

50.     Defendant operates websites, social media accounts, and marketplaces, including domains such as "horseplay.cc," "horseplaytoys.vip," and "horseplaytoys.com," offering inflatable products that are identical or substantially similar to Plaintiff's products.

51.     Defendant's use of the "Horseplay Toys" name and similar branding is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of his goods, in violation of 15 U.S.C. § 1125(a)(1)(A).

52.     The infringing name and presentation suggest a false affiliation or connection with Plaintiff's established brand, despite no such relationship existing and no authorization having been granted by Plaintiff.

53.     Defendant's conduct constitutes a false designation of origin and a misrepresentation of the source and sponsorship of his products in interstate commerce.

54.     Defendant's adoption and use of the "Horseplay Toys" name and

related branding were undertaken knowingly, deliberately, and in bad faith, with the specific intent to trade on Plaintiff's goodwill, to cause confusion as to the affiliation, connection, or association between Defendant and Plaintiff, and to damage Plaintiff's business and reputation. Defendant's continued use of the infringing designation after receiving notice of Plaintiff's rights and after being expressly demanded to cease such conduct constitutes willful and intentional infringement.

55. As a direct and proximate result of Defendant's acts, Plaintiff has suffered damage to its reputation, loss of sales, and dilution of its branding and goodwill because of Defendant's false designation.

56. Plaintiff has no adequate remedy at law and is entitled to immediate and permanent injunctive relief, as well as compensatory and statutory damages, costs, and attorneys' fees.

57. Under 15 U.S.C. § 1117(a), Plaintiff is entitled to recover its reasonable attorney's fees and costs from Defendant, if Plaintiff is the prevailing party in this action.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A. Enter a temporary injunction pursuant to 15 U.S.C. § 1116(a), against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from using the word "Horseplay," "Horseplay Toys," or any confusingly similar name, mark, domain, or trade dress in connection with the sale, offering for sale, promotion, or advertising of inflatable products;

B.      Enter a permanent injunction pursuant to 15 U.S.C. § 1116(a), against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from using the word "Horseplay," "Horseplay Toys," or any confusingly similar name, mark, domain, or trade dress in connection with the sale, offering for sale, promotion, or advertising of inflatable products;

C.      Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, attorneys' fees, and costs caused by Defendant's conduct; and

D.      Award such other and further relief in law or equity as this Court deems just and proper.

## COUNT 3
## COMMON LAW UNFAIR COMPETITION

58.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

59.    Since at least 2018, Plaintiff has continuously marketed and sold its artist-designed inflatable products throughout the United States using the trade name "Horseplay Toys."

60.    Plaintiff has dedicated substantial time, effort, and financial resources to branding and advertising its trade name and associated designs and has developed substantial goodwill and a trusted reputation in the artist-designed inflatable toy industry.

61.    The trade name "Horseplay Toys" is arbitrary and distinctive in that it does not, in and of itself, describe the nature of Plaintiff's products or identify the artist-designed inflatable goods industry in which Plaintiff competes.

62.    After becoming a dissatisfied customer of Plaintiff, Defendant created and began operating a competing business under the name "Horseplay Toys," offering the same or substantially similar artist-designed inflatable products.

63.    Defendant has used the name "Horseplay Toys" on websites and online storefronts, including, but not limited to, domains incorporating the "Horseplay" name, to market and sell goods that directly compete with those of Plaintiff.

64.    Plaintiff has long used "Horseplay Toys" as a storefront brand, and Defendant deliberately chose the exact same name for his competing business. He not only uses this identical trade name for his storefront but also adopts it verbatim in customer-facing communications on social media, including accounts labeled "@HorseplayLLC" and "@HorseplayToys," thereby posing as the legitimate business.  Under these names, Defendant regularly publishes provocative, inciting and defamatory posts and replies designed to tarnish Plaintiff's reputation and mislead customers.  Defendant has admitted in public posts that his use of the "HorseplayLLC" identity is "more about SEO integration than anything" and is intended to prove that the real Horseplay entity is not as professional as it appears; by manipulating search engine optimization and social-media algorithms, he deliberately targets the visibility of Plaintiff's website

and directs internet traffic to his negative content. These tactics further demonstrate Defendant's bad-faith intent to trade on Plaintiff's goodwill and sow confusion in the marketplace.

65. By marketing and selling competing inflatable products under the "Horseplay Toys" name, Defendant presents himself as competing in the same markets and channels of trade in which Plaintiff's trade name is well-established and recognized.

66. Defendant's infringing activities, including the adoption of a confusingly similar trade name, and mimicry of Plaintiff's online presentation, and campaign of defamatory and inciting online communications under the "Horseplay Toys" name are intentionally directed at diverting customers away from Plaintiff and trading on Plaintiff's reputation and goodwill.

67. Defendant's actions, as set forth above, are likely to and do cause consumer confusion as to the sponsorship, affiliation, or origin of the products offered under the "Horseplay Toys" name and cause diminution of the value of Plaintiff's business and trade name. Defendant has publicly admitted that he is deliberately trying to create bad press associated with the "Horseplay Toys" name and to punish Plaintiff by tarnishing its reputation.

68. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable harm to its goodwill, reputation, and brand identity, as well as lost sales and business opportunities, for which there is no adequate remedy at law.

69.    Plaintiff has engaged in the business of designing, producing, and selling inflatable products, including artistic and novelty items. Plaintiff has continuously used the name "Horseplay Toys" in commerce since at least 2018 and has developed significant goodwill and brand recognition.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A.    Enter a temporary injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to use the word "Horseplay" or any confusingly similar trade name, mark, or designation in connection with the advertising, offering for sale, or sale of artist-designed inflatable products, including inflatable adult products;

B.    Enter a permanent injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to use the word "Horseplay" or any confusingly similar trade name, mark, or designation in connection with the advertising, offering for sale, or sale of artist-designed inflatable products, including inflatable adult products;

C.    Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, and costs caused by Defendant's unfair competition; and

D.    Award such other and further relief in law or equity as this Court deems just and proper.

### COUNT 4
### DEFAMATION *PER SE*

70.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

71.    Defendant, while under the guise of the Horseplay Toys name, published multiple false and defamatory statements about Plaintiff and its members across no less than fifteen (15) public platforms, including Trustpilot, Reddit, X, FurAffinity, and the Better Business Bureau.

72.    These statements included accusations that Plaintiff committed fraud, theft, tax evasion, sold adult-themed products to minors, harassed customers across jurisdictions, violated the American with Disabilities Act, and infringed on intellectual properties.

73.    These statements were published to third parties and were not privileged.

74.    Defendant knew or should have known the statements were false when made and published them with actual malice or reckless disregard for the truth.

75.    The false accusations impute criminal conduct and reflect negatively on Plaintiff's business character and practices, constituting defamation *per se*.

76.    Plaintiff has suffered reputational harm and economic damages as a direct result.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, demands judgment against Defendant, Nino Ruisi, for compensatory damages, consequential

(special) damages, including lost profits, punitive damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**COUNT 5**
**TRADE LIBEL/INJURIOUS FALSEHOOD**

77.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

78.    Defendant published statements specifically disparaging the quality, safety, and legitimacy of Plaintiff's products and services.

79.    The statements were false, made with actual malice, and intended to interfere with Plaintiff's business relationships.

80.    The publications were reasonably calculated to, and did in fact, deter third parties from dealing with Plaintiff, and Defendant had actual knowledge of its wrongfulness and the high probability of injury or damage to Plaintiff, yet pursued the conduct regardless.

81.    Plaintiff has suffered damages because of these disparaging publications.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, demands judgment against Defendant, Nino Ruisi, for compensatory damages, consequential (special) damages, including lost profits, punitive damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 6
## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIP

82.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

83.    Plaintiff maintains established business relationships with customers, vendors, artists, and other collaborators.

84.    Defendant had knowledge of these relationships through his previous dealings with Plaintiff and by monitoring the company's public and social media presence.

85.    Defendant intentionally contacted third parties working with or affiliated with Plaintiff and made false and threatening statements about Plaintiff.

86.    Defendant's interference was unjustified and motivated by malice and retaliation for Plaintiff's refusal to accommodate his personal demands.

87.    As a result, Plaintiff lost business opportunities and suffered disruption to its professional relationships, causing lost profits and damages.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, demands judgment against Defendant, Nino Ruisi, for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**COUNT 7**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §§ 501.201, *ET SEQ.*, FLA. STAT.**

88.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

89.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce. *See* § 501.204, Fla. Stat. (2025).

90.    Defendant's actions in mimicking Plaintiff's name, brand identity, and marketing and social media platforms constitute deceptive and unfair business practices.

91.    Defendant knowingly misrepresented himself as affiliated with, or as the rightful owner of, the "Horseplay Toys" brand in order to confuse customers and divert sales.

92.    Defendant's campaign of online harassment and impersonation caused confusion among consumers and damaged Plaintiff's reputation.

93.    These practices violate the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), section 501.204.

94.    Because of Defendants' unfair and deceptive practices, Plaintiff has been damaged and continues to face ongoing and irreparable harm as a result of Defendant's unfair competition.

95.    Under section 501.2105, *Florida Statutes*, Plaintiff is entitled to recover its reasonable attorney's fees and costs from Defendant, if Plaintiff is the prevailing party in this action.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A.    Enter a temporary injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to use the word "Horseplay," "Horseplay Toys," or any confusingly similar trade name, mark, or designation in connection with the advertising, offering for sale, or sale of inflatable products;

B.    Enter a permanent injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to use the word "Horseplay," "Horseplay Toys," or any confusingly similar trade name, mark, or designation in connection with the advertising, offering for sale, or sale of inflatable products;

C.    Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, attorneys' fees, and costs caused by Defendant's unfair competition; and

D.    Award such other and further relief in law or equity as this Court deems just and proper.

## COUNT 8
## <u>VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT</u>
### (18 U.S.C. § 1030)

96.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

97.    Plaintiff operates its business and e-commerce storefront through computer servers and a Shopify platform that are used in and affect interstate and foreign commerce.  These servers and the Shopify platform are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2).

98.    On numerous occasions, Defendant knowingly, intentionally, and without authorization accessed or exceeded authorized access to Plaintiff's protected computers by creating multiple fake customer accounts and placing hundreds of fraudulent orders using false names, dummy email addresses, and bogus shipping data.  Defendant also attempted to have Plaintiff's Shopify store shut down by lodging false complaints with Shopify support and exploiting confusion between his own store's name and Plaintiff's store with the intent to disrupt Plaintiff's e-commerce operations and to induce the platform to suspend or disable Plaintiff's store.

99.    Defendant's repeated access to Plaintiff's protected computers and the transmission of fraudulent orders constitute "access" and "transmission" under the CFAA and impaired the integrity and availability of Plaintiff's e-commerce platform, causing damage and loss.

100.    Defendant's conduct was intended to and did cause damage and loss to Plaintiff's protected computers. The fraudulent orders overloaded

Plaintiff's order-management systems, required staff time and resources to identify and cancel the orders, and strained the platform's functionality. Plaintiff's losses—including mitigation costs, system downtime, employee time, and diminished goodwill—aggregate to more than $5,000.00 in a one-year period, satisfying the jurisdictional threshold for a private cause of action under the CFAA.

101. Defendant's actions constitute violations of 18 U.S.C. § 1030(a)(4) and § 1030(a)(5)(A) because he intentionally accessed Plaintiff's protected computers without authorization, knowingly caused the transmission of information and commands, and inflicted damage and loss.

102. As a direct and proximate result of Defendant's willful and malicious violations of the CFAA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A.    Enter a temporary injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from accessing or causing access to Plaintiff's protected computers and online store without authorization, placing fraudulent orders, transmitting information to Plaintiff's e-commerce platform, or using any technological device or method to bypass Plaintiff's security measures;

B.    Enter a permanent injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to access, cause access to, or disrupt Plaintiff's protected computers and ordering

him to remove and refrain from using any programs, code, commands, or technological tools used to obtain such unauthorized access in the future;

C.    Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, and costs caused by Defendant's unauthorized computer access and transmissions; and

D.    Award such other and further relief in law or equity as this Court deems just and proper.

## COUNT 9
## VIOLATION OF THE FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT (CADRA) (Fla. Stat. §§ 668.801–668.805)

103.    Plaintiff adopts, restates, and incorporates by reference the allegations in Paragraphs 1 through 34.

104.    Plaintiff owns and operates protected computers used in the operation of its business, including its Shopify storefront and associated systems. These computers store business information and data, and are used to process orders and communicate with customers.

105.    Defendant knowingly and with intent to cause harm and loss accessed Plaintiff's protected computers without authorization by creating numerous fake accounts and placing fraudulent orders. Defendant circumvented security filters by using false names, dummy email addresses, bogus shipping data, and other deceptive tactics to flood Plaintiff's systems with unauthorized order transmissions. Defendant's unauthorized transmissions of order data, commands, and other information flooded Plaintiff's systems and

caused harm and loss by diverting computing resources, requiring staff mitigation, and degrading system performance.

106.    Defendant's conduct also involved trafficking in technological access barriers.  By registering domain names, websites, and social media profiles closely mimicking Plaintiff's trade name and misdirecting customers, Defendant encouraged and facilitated unauthorized access to Plaintiff's protected computers and systems.

107.    As a result of Defendant's violations of CADRA, Plaintiff suffered actual damage and lost profits, as well as ongoing harm to its business operations.

108.    Plaintiff is entitled to injunctive relief and attorney's fees as provided by section 668.804, *Florida Statutes*.

WHEREFORE, Plaintiff, Horseplay Inflatables, LLC, respectfully requests that this honorable Court:

A.    Enter a temporary injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from accessing or causing access to Plaintiff's protected computers and online store without authorization, placing fraudulent orders, transmitting information to Plaintiff's e-commerce platform, or using any technological device or method to bypass Plaintiff's security measures;

B.    Enter a permanent injunction against Defendant, Nino Ruisi, individually and d/b/a "Horseplay Toys," enjoining him from continuing to access, cause access to, or disrupt Plaintiff's protected computers and ordering

him to remove and refrain from using any programs, code, commands, or technological tools used to obtain such unauthorized access in the future;

      C.      Enter a Final Judgment in favor of Plaintiff and against Defendant for compensatory damages, consequential (special) damages, including lost profits, prejudgment interest, attorneys' fees, and costs caused by Defendant's unauthorized computer access and transmissions; and

      D.      Award such other and further relief in law or equity as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

109.  Plaintiff demands a trial by jury on all issues so triable.

DATED: December 19, 2025.

      THE CARLIN LAW FIRM, PLLC
      *Attorneys for Plaintiff,*
      *Horseplay Inflatables, LLC*
      One Financial Plaza
      100 S.E. 3rd Avenue, Suite 1103
      Fort Lauderdale, Florida 33394
      Tel.: (954) 440-0901
      Primary e-mail: eservice@carlinfirm.com


      By:   */s/ Justin C. Carlin*
           JUSTIN C. CARLIN, ESQUIRE
           Fla. Bar No.: 068429
           Sec. e-mail: jcarlin@carlinfirm.com
           Ter. e-mail:mpanico@carlinfirm.com