UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORSEPLAY INFLATABLES, LLC, *a*
*Florida limited liability company*,

      Plaintiff,

v.                                                                    Case No:  8:25-cv-03477-JLB-NHA

NINO JOSEPH RUISI, III,

      Defendant.

_____/

## **ORDER**

    This is matter is before the Court on Plaintiff Horseplay Inflatables, LLC's Motion for a Temporary Restraining Order.  (Doc. 15).  Plaintiff alleges that *pro se* Defendant Nine Joseph Ruisi, III's use of a confusingly similar trade name violates the Lanham Act, common law unfair competition and trademark infringement, and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  (*Id.*).  Plaintiff seeks a temporary restraining order ("TRO") and preliminary injunction against Defendant enjoining him from using any confusingly similar trade name.  For the reasons set forth below, the Court concludes that Plaintiff has not demonstrate substantial likelihood of success on the merits.  Accordingly, Plaintiff's motion for injunctive relief is **DENIED**.

## BACKGROUND

Plaintiff is a company engaged in the design, production, and sale of adult inflatable toy products.  (Doc. 15 at 1).  Beginning mid-2023, Defendant, a former customer of Plaintiff's, organized several online stores and marketed similar products under the name "Horseplay Toys."  (Doc. 2 at ¶ 9; Doc. 15 at 2).  Plaintiff claims that the websites create confusion among customers because they use Plaintiff's trade name, mimic Plaintiff's trade dress, and offer nearly identical inflatable products.  (*Id.*).  Plaintiff further claims that, during the same timeframe, Defendant opened social media accounts under "Horseplay Toys" to impersonate Plaintiff and publish defamatory statements.  (Doc. 2 at ¶¶ 9–10; Doc. 15 at 2).

On December 19, 2025, Plaintiff filed this action against Defendant, bringing nine claims: (1) common law trademark infringement, (2) false designation of origin under the Lanham Act, (3) common law unfair competition, (4) defamation per se, (5) trade libel, (6) tortious interference with existing business relationship, (7) violation of FDUTPA, (8) violation of the Computer Fraud and Abuse Act, and (9) violation of the Florida Computer Abuse and Data Recovery Act.  (Doc. 1 at 10–29).

On March 6, 2026, Plaintiff filed its Motion for Temporary Restraining Order and Preliminary Injunction, seeking to enjoin Defendant from use of any confusingly similar trade name.  (Doc. 15).  The Motion relies only on counts one, two, three, and seven.  (*Id.*).  Defendant responded in opposition.  (Doc. 20).

**LEGAL STANDARD**

The Court may grant a motion for temporary restraining order and preliminary injunction if Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the restraining order or injunction; (3) that the threatened injury to it outweighs the harm the restraining order or injunction would cause other litigants; and (4) that the restraining order or injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). These are "extraordinary remed[ies]" to which the Court should "pay particular regard for the public consequences" of granting. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted); *Siegel*, 234 F.3d at 1176.

**DISCUSSION**

Plaintiff seeks a temporary restraining order and preliminary injunction on the following claims: (1) False Designation under 15 U.S.C. § 1125(a)(1)(A); (2) Common Law Unfair Competition; (3) Common Law Trademark Infringement; and (4) Violations of FDUTPA. (Doc. 15). Upon careful review of Plaintiff's Motion, Complaint, and the entire record, the Court finds that Plaintiff has not demonstrated a substantial likelihood of success on the merits or irreparable harm

3

to support a temporary restraining order.  The Court further finds that Plaintiff cannot show that it will suffer irreparable harm absent a preliminary injunction.[1] Accordingly, the Motion is **DENIED**.

**I.      Substantial Likelihood of Success on the Merits.**

Plaintiff alleges that it has enforceable trademark rights acquired through common law to the name "Horseplay Toys" and that Defendant used this trademark in violation of 15 U.S.C. § 1125(a)(1)(A), a section of the Lanham Act prohibiting false designation of origin.  (*Id.* at 5).  This, Plaintiff argues, is likely to cause customer confusion and result in unfair competition and trademark infringement. (*Id.* at 5–6).

To prevail on a false designation of origin claim, a plaintiff must show it was either actually or likely to be damaged by the fact that the defendant used a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1312–13 (11th Cir. 2001) (quoting 15 U.S.C. § 1125(a)(1)(A)).

"Under the Lanham Act, federal trademark protection is available only to 'distinctive' marks—'marks that serve the purpose of identifying the *source* of . . . goods or services.'" *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782 (11th Cir. 2020) (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351,

---

[1] The Court notes that Plaintiff's Motion seeking a preliminary injunction does not include "Preliminary Injunction" in its title, as required by M.D. Fla. Loc. R. 6.02(a)(1).

1357 (11th Cir. 2007) (emphasis in original)).  There are two ways a mark can be distinctive: it can be "inherently" distinctive, or it can "acquire" its distinctiveness. *Id.*  An "inherently" distinctive mark identifies the source of a product or service. For example, "Coca-Cola" is an inherently distinctive mark of a single brand and producer.  *Id.*  On the other hand, a mark that has "acquired" distinctiveness "might initially have been understood to describe a broad class of potential products or services, but over time it has taken on a 'secondary meaning' that links it to a particular source: 'California Pizza Kitchen,' for example, may facially describe any random pizza eatery in the Golden State, but the public has come to associate it with one brand in particular."  *Id.* at 783.

To demonstrate proof of a valid trademark, a plaintiff need not have a registered mark.  The Eleventh Circuit has recognized that "the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of [the Lanham Act] where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir.1984) (internal quotations and citations omitted).  However, only those marks that are capable of distinguishing the owner's goods from those of others, *i.e.*, that are sufficiently "distinctive," are eligible for federal registration or protection as common law marks under the Lanham Act.  *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

The Eleventh Circuit recognizes four categories of distinctiveness, which are listed in ascending order of strength: "(1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003).

A term which suggests the basic nature of the service is generic and is typically incapable of achieving service mark protection because it has no distinctiveness. *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991). Generic marks are generally incapable of receiving trademark protection and may never be registered as trademarks under the Lanham Act. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007). Descriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring "secondary meaning." 15 U.S.C. § 1052(f); *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991).

In evaluating whether there is a likelihood of confusion between two marks, the Eleventh Circuit applies a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the

infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007). In this circuit, we are required to consider each of the seven factors. *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004).

That said, if a mark is generic, descriptive, and not inherently distinctive, the marks must have attained secondary meaning for a plaintiff to have a protectable interest in them. *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 117–18 (5th Cir. 1979) ("The case law uniformly requires that we refuse trade name protection to a descriptive term unless it has acquired a secondary meaning."). A descriptive term acquires secondary meaning when "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* at 118.

Here, Plaintiff has failed to demonstrate that it has common law trademark rights. The mark "Horseplay Toys" is generic because customers can readily perceive the nature of the product. In a similar case, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179 (11th Cir. 2011), the Eleventh Circuit evaluated whether "Universal Night Sight/UNS" was protected as a common law trademark. The company manufactured night vision devices for firearms. The district court found that customers could readily perceive the nature of the product

7

because "night sight," or the ability to see at night, did not require customers to use their imagination. *Id.* at 1189–90. The district court found that "night sight" was a generic term used in the sniper community to refer to products that enable users to see at night. The district court further found that the word "universal" was descriptive and, therefore, the mark as a whole was not protected. *Id.* The Eleventh Circuit affirmed, holding that the mark was descriptive and could not be protected. *Id.*

Likewise, Plaintiff's alleged mark in this case "Horseplay Toys" is generic in so far as the basic nature of the service is generic. *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991). Specifically, customers can infer that the nature of the product is horse toys. *Engineered Tax Services, Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1329 (11th Cir. 2020) (explaining that a mark is "merely descriptive, rather than suggestive—and thus is not inherently distinctive—if 'the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination'"). Generic marks like this are incapable of receiving trademark protection and may never be registered as trademarks under the Lanham Act. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007). Because Plaintiff's marks are descriptive and not inherently distinctive, the marks must have attained secondary meaning for Plaintiff to have a protectable interest in them.

8

In evaluating whether a mark has attained a secondary meaning, the Court considers four factors: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the user of the mark to promote a conscious connection in the public's mind between the name and the user's product or business; and (4) the extent to which the public actually identifies the name with the user's product or venture." *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 648 n.8 (11th Cir. 2007). The party seeking trademark protection carries the burden of proof and must produce a "high degree of proof . . . to establish secondary meaning." *Id.* (emphasis added).

First, Plaintiff alleges that it has used "Horseplay Toys" in commerce since at least 2018, adopted the name on Shopify in 2019, and used in on social media platforms since 2015—well before Defendant's use of the name. (Doc. 15 at 7; Doc. 2 at ¶ 47). There is no bright line rule requiring a specific timeframe to acquire secondary meaning. Taking these allegations as true, Plaintiff has satisfied this element. *Welsh v. Martinez*, No. 2:22-cv-216, 2022 WL 2356971, at *1 n.1 (M.D. Fla. June 30, 2022) (citing *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)) (in the context of resolving a motion for a temporary restraining order, "the facts will be presented in a light most favorable to [Plaintiff]").

Second, Plaintiff alleges that it markets and sells its products through its e-commerce storefront and social media, reaching customers throughout the United States and internationally. (Doc. 15 at 7; Doc. 2 at ¶ 43). These allegations are insufficient to satisfy the second factor. For advertising to serve as evidence of

9

secondary meaning, there must be a link between the trade dress and the sales and advertising. *Vital Pharms., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 1237, 1256 (S.D. Fla. 2020) (collecting cases); *see, e.g.*, *Tropic Ocean Airways, Inc. v. Floyd*, No. 13-CV-10113-JLK, 2014 WL 12479408, at *3 (S.D. Fla. May 9, 2014) (finding insufficient support for the second factor because the plaintiff pleaded general allegations of advertising and promotion without specifying how it promoted the trademark). Here, Plaintiff does not indicate how it promoted the mark in its advertising.

As for the third and fourth factors, Plaintiff does not adequately explain its efforts to promote a conscious connection between "Horseplay Toys" and its product in the public's mind or the extent to which the public does identify the name with its product. (Doc. 15 at 7; Doc. 2). Indeed, Plaintiff ignores the third factor altogether and, in support of the fourth, merely states that there is "substantial consumer recognition" without more. (Doc. 15 at 7; Doc. 2 at ¶ 37); *Tropic Ocean Airways*, 2014 WL 12479408, at *3 (explaining that a conclusory statement that plaintiff has "developed substantial goodwill" in promoting its product to customers is insufficient).

On these allegations, Plaintiff has failed to meet its burden to demonstrate that the "Horseplay Toys" mark is distinct rather than generic. *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 648 n.8 (11th Cir. 2007) (explaining that the party seeking trademark protection carries the burden of proof and must produce a "high degree of proof . . . to establish secondary meaning for a

descriptive term"). Because "Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law," Plaintiff has not demonstrated a substantial likelihood of success on the merits as to its FDUTPA claim or its Florida common law unfair competition and trademark infringement claims. *Custom Mfg. & Eng'g*, 508 F.3d at 652.

## II.   Irreparable Harm.

Even if Plaintiff could present evidence that it is substantially likely to prevail on the merits, it cannot demonstrate irreparable harm to support a temporary restraining order or preliminary injunction.

"A delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (holding that the district court did not abuse its discretion in concluding that the plaintiff's unexplained five-month delay in seeking a preliminary injunction was fatal to any showing of irreparable injury); *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, No. 22-14257, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (affirming the district court's denial of a preliminary injunction without evidentiary hearing where the motion was filed nearly six months the complaint and relied on evidence available at the time the action was initiated and offered no explanation for the delay). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal*, 840 F.3d at 1248 (emphasis in original).

11

Plaintiff filed its Complaint on December 19, 2025, and—nearly three months later, on March 6, 2026—moved for a temporary restraining order and preliminary injunction. (Doc. 2; Doc. 15). Plaintiff neither provides an explanation for this delay, nor can the Court discern a justification for the delay. Importantly, the motion for preliminary injunction "relie[s] exclusively on evidence that was available to [Plaintiff] at the time it filed its complaint . . . ." (*Id.*); *Wreal*, 840 F.3d at 1248–49. To be sure, Plaintiff's Complaint alleges that in mid-2023—years before Plaintiff took action—Defendant created and began operating an online storefront using the name "Horseplay Toys." (Doc. 2 at ¶ 9). And the Complaint establishes Plaintiff's knowledge of Defendant's use of the name on social media platforms during the same timeframe. (*Id.* at ¶¶ 9–10). Thus, Plaintiff's lack of "speedy and urgent action" serves to demonstrate a lack of imminent irreparable harm. *See Wreal*, 840 F.3d at 1248.

## CONCLUSION

A final note: the Court held a lengthy hearing to discuss the status and posture of the case with counsel and both parties. (Doc. 41). During that hearing, the Court encouraged the parties to make attempts to amicably resolve this matter and, in light of Defendant's *pro se* status and with a sensitivity for the expenses the parties' would be likely to incur in this litigation, a settlement conference conducted by a U.S. Magistrate Judge at the expense of this Court. The Court made such an offer because it became evident during that hearing that there were matters for which the parties were amendable to amicably resolve. Perhaps that has changed.

12

(*See, e.g.,* Doc. 52 at 2–3).  Should the parties desire the Court to schedule a settlement conference, it shall file a joint notice requesting such by July 15, 2026.

The Court has carefully reviewed the entire record in this case and has assessed the merits of all claims brought by Plaintiff.  The Court finds that issuing any injunctive relief is inappropriate.  Should any of Plaintiff's claims survive dispositive stages of this litigation, any relief would occur at final judgment.

Accordingly, Plaintiff's Motion for Temporary Restraining Order (Doc. 15) is **DENIED**.

**ORDERED** in Tampa, Florida, on May 26, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

13