UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORSEPLAY INFLATABLES, LLC, *a*
*Florida limited liability company*,

      Plaintiff,

v.                                                                 Case No:   8:25-cv-03477-JLB-NHA

NINO JOSEPH RUISI, III,

      Defendant.

_____/

## ORDER

This matter is before the Court on Plaintiff Horseplay Inflatables, LLC's Renewed Verified Motion for Preliminary Injunction or, in the Alternative, for Reconsideration.  (Doc. 55).  Defendant Nine Joseph Ruisi, III, proceeding *pro se*, responds in opposition.  (Doc. 56).  Upon careful review, the Court **DENIES** Plaintiff's Renewed Motion.

## BACKGROUND

Plaintiff is a company engaged in the design, production, and sale of adult inflatable toy products (Doc. 2).  Plaintiff alleges that it has used the name "Horseplay Toys" on X, formerly known as Twitter, and has operated an online storefront under that name since February 2019.  (Doc. 55 at 2–3).  Beginning in mid-2023, Defendant, a former customer of Plaintiff's, began operating several online storefronts using the name "Horseplay Toys" and marketing similar products while mimicking Plaintiff's trade dress.  (*Id.* at 3; Doc. 2 at ¶ 9).  Additionally,

Plaintiff alleges that Defendant opened social media accounts under "Horseplay Toys" around the same time.  (Doc. 2 at ¶ 10; Doc. 55 at 3).

On December 19, 2025, Plaintiff filed this action against Defendant, pleading nine claims: (1) common law trademark infringement, (2) false designation of origin under the Lanham Act, (3) common law unfair competition, (4) defamation *per se*, (5) trade libel, (6) tortious interference with existing business relationship, (7) violation of the Florida Deceptive and Unfair Trade Practices Act, (8) violation of the Computer Fraud and Abuse Act, and (9) violation of the Florida Computer Abuse and Data Recovery Act.  (Doc. 2 at 10–29).

On March 6, 2026, Plaintiff moved for a temporary restraining order and preliminary injunction under counts one, two, three, and seven, seeking to enjoin Defendant from continued use of any confusingly similar trade name.  (Doc. 15).

On May 26, 2026, following a hearing with the parties, the Court denied Plaintiff's motion.  (Doc. 54).  In doing so, the Court found that Plaintiff could not demonstrate irreparable harm or substantial likelihood of success on the merits.  (*Id.* at 4–12).

On July 15, 2026, Plaintiff filed a Renewed Motion for Preliminary Injunction or, in the Alternative, Reconsideration of the Court's (Doc. 54) Order.  (Doc. 55).  Defendant responded in opposition.  (Doc. 56).

## LEGAL STANDARD[1]

The Court reconsiders non-final orders through Federal Rule of Civil Procedure 54(b), which provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b). "Although Rule 54(b) does not delineate the parameters of a district court's discretion to reconsider interlocutory orders, we have at least indicated that Rule 54(b) takes after Rule 60(b)." *Herman v. Hartford Life & Accident Ins. Co.*, 508 F. App'x 923, 927 n.1 (11th Cir. 2013).

The decision to grant a motion for reconsideration of a non-final order is committed to the sound discretion of the Court. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993); *see Doss v. Holder*, No. 8:22-CV-129-CEH-AAS, 2024 WL 3952754, at *2 (M.D. Fla. Aug. 27, 2024). "This Court has recognized three grounds justifying reconsideration of an

---

[1] The Court construes the Renewed Motion for Preliminary Injunction as only a motion for reconsideration. Despite Plaintiff's insistence that "[t]his is not the same [m]otion the Court denied," the motion before the Court now seeks the same relief as its prior motion. (Doc. 55 at 1, 15–16; Doc. 15 at 18–20). Indeed, the renewed motion asks the Court to revisit its denial of the original motion and comes forward with new evidence to alter the prior Order. (*See* Doc. 55); *Oviedo Med. Ctr., LLC v. Adventis Health Sys./Sunbelt, Inc.*, No. 619CV1711ORL78EJK, 2020 WL 4218276, at *1 n.2 (M.D. Fla. Apr. 28, 2020) (treating a renewed motion for preliminary injunction as a motion for reconsideration where "Plaintiff has come forward with new evidence in an attempt to alter this Court's prior determination on the merits of its motion seeking identical relief" and finding that "[t]his is the quintessential request for reconsideration, and this Court will require Plaintiff to make the heightened showing accordingly"); *Pearson v. Wilmington Sav. Fund Soc'y, FSB*, No. 1:25-CV-03748-ELR, 2025 WL 3780297, at *1 (N.D. Ga. Dec. 11, 2025) ("Although not titled as such, Plaintiff's motion is yet another motion for reconsideration. By way of his renewed motion, Plaintiff invites the Court to revisit its denial of Plaintiff's original motion for emergency equitable relief.").

order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *True v. Comm'r*, 108 F. Supp. 2d 1361, 1365 (M.D. Fla. 2000).

"Reconsideration of a prior order is an extraordinary remedy to be employed sparingly." *United States v. Thompson*, No. 24-10469, 2024 WL 4471414, at *2 n.2 (11th Cir. Oct. 11, 2024) (citation and internal quotation marks omitted); *McGuire v. Ryland Grp., Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007). "A motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 74 F. Supp. 2d 1188, 1192 (M.D. Fla. 1999) (citation and internal quotation marks omitted).

"A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration." *McGuire*, 497 F. Supp. 2d at 1358 (citation and internal quotation marks omitted). "This Court will not reconsider a ruling based on arguments 'which could, and should, have been previously made.'" *Id.* (quoting *Scelta v. Delicatessen Support Servs., Inc.*, 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000)). Nor will the Court "reconsider a previous ruling when 'a party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking.'" *Id.* (quoting *Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999)).

4

## DISCUSSION

Plaintiff seeks reconsideration on the grounds that the Court's prior Order denied the original motion without an evidentiary hearing, did not consider whether the trademark "Horseplay Toys" was suggestive, and treated Plaintiff's delay in seeking a preliminary injunction as unexplained. (Doc. 55 at 2).

First, a court's consideration of a preliminary injunction does not necessitate an evidentiary hearing. "An evidentiary hearing is not always required before the issuance of a preliminary injunction." *Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 936 (11th Cir. 2014). Only "[w]here the injunction turns on the resolution of bitterly disputed facts" is "an evidentiary hearing . . . normally required to decide credibility issues." *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989)); *see also Barr v. Tucker*, 662 F. Supp. 3d 1353, 1361 (S.D. Ga. 2023) (denying plaintiff's motion for evidentiary hearing on a preliminary injunction where "there is little dispute as to raw facts and the dispute revolves around the inferences to be drawn from such facts"). Plaintiff's original motion did not point to bitterly contested facts. (*See* Doc. 15). To be sure, Defendant's response in opposition focused not on the substance of Plaintiff's motion but on allegations of stalking by Plaintiff. (Doc. 20). Thus, no evidentiary hearing was required.

Second, the Court notes that Plaintiff's original motion did not argue that its mark was suggestive—indeed, the motion did not argue that the mark was descriptive, suggestive, or arbitrary or fanciful. (Doc. 15 at 5–9); *see Gift of*

5

*Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003).  Instead,

Plaintiff merely argued that it acquired a common law trademark by laying out the

timeline of its use of "Horseplay Toys" and the potential for customer confusion.

(Doc. 15 at 7–9).  The argument that the mark is suggestive was available at the

time of the first motion and, therefore, is not appropriate on reconsideration.

*McGuire*, 497 F. Supp. 2d at 1358 (quoting *Scelta*, 89 F. Supp. 2d at 1320) ("This

Court will not reconsider a ruling based on arguments 'which could, and should,

have been previously made.'"); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,

788 F.3d 1318, 1322 (11th Cir. 2015) ("A party seeking a preliminary injunction

bears the burden of establishing its entitlement to relief.").

In any case, in evaluating whether "Horseplay Toys" qualified as a common

law trademark, the Court considered whether the mark was generic, descriptive, or

suggestive.  (Doc. 54 at 6).  The Court concluded that the mark was descriptive[2] and

determined that it had no secondary meaning.  (*Id.* at 6–11).  In so finding, the

Court relied on *Knights Armament Co. v. Optical Sys. Tech., Inc.*, which held that

where "a customer in the relevant community can readily perceive the nature of the

product," the term is descriptive rather than suggestive.  654 F.3d 1179, 1189 (11th

Cir. 2011); *see also You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-T-

27EAJ, 2013 WL 521784, at *3 (M.D. Fla. Feb. 11, 2013) (explaining that "[t]he line

---

[2] In its prior Order evaluating Plaintiff's mark, the Court cited cases evaluating descriptiveness of marks and ultimately concluded that the mark is "descriptive and not inherently distinctive."  (Doc. 54 at 7–8).  Although the Court used the words "generic" and "descriptive" interchangeably, the most appropriate word, as noted in the cases cited by the Court, is "descriptive."  (*Id.*).  In all events, the Court held that the mark is descriptive and not inherently distinctive.  (*Id.*).

between descriptive and suggestive marks can be difficult to draw" and that a suggestive mark "does not describe the product's features") (citation, internal quotation marks, and emphasis omitted).

Next, Plaintiff argues that, even if the mark is descriptive, it "is prepared to establish secondary meaning" without actually doing so. (Doc. 55 at 7). Again, it is Plaintiff's burden to establish entitlement to a preliminary injunction. *GeorgiaCarry.Org*, 788 F.3d at 1322. It has not carried that burden.

Plaintiff further argues that Defendant's X posts under the name "Lord of the flies (horseplaytoys)" on April 28, 2026, and May 6, 2026, are evidence of customer confusion. (Doc. 55 at 8) (citing Doc. 55-9; Doc. 55-10). The Court disagrees. Likelihood of confusion is a multifactor test, considering: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007).

The recent posts are from "Lord of the flies (horseplaytoys)" from the handle[3] "@pooltoyx." (Doc. 55-9; Doc. 55-10). Thus, the strength or distinctiveness of the

---

[3] "A 'handle' is used to identify a particular user on [X, formerly known as] Twitter[,] and is formed by placing the @ symbol next to a username." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 n.4 (M.D. Fla. 2015); X, *X Help Center*, https://help.x.com/en/resources/glossary (last visited July 30, 2026).

alleged mark having been infringed is weak.  Furthermore, these posts do not advertise or sell any product.  The April 28, 2026, post is a reply to another company, PuffyPaws, that says, "I love how liking furry inflatables can lead to you being introduced to the most cut throat unexpected business tactics . . . ." (Doc. 55-9 at 1).  Other posts on the same day take further issue with adult inflatable toy companies, writing "apparently what has happened with puffy paws . . . is that they . . . are . . . [m]isappropriating funds" and "some people become 'problem customers' if they ask what they paid for too much. That[']s how the inflatable community operates." (*Id.* at 2–3).  Likewise, the May 6, 2026, X post takes issue with a contract from "squeakclub.com." (Doc. 55-10).  And Plaintiff has not shown customer confusion.  Horseplay Toys reached out to PuffyPaws to explain that it was not a member of their team posting these posts, to which PuffyPaws replied "[i]f it isn't you, th[e]n you need to take care of this please!" (Doc. 55-9 at 4).  But PuffyPaws is a peer company—not a customer.

Finally, the Court did not err in finding that Plaintiff's significant delay in seeking a preliminary injunction weighs heavily against a finding of irreparable harm.  Plaintiff filed its Complaint on December 19, 2025, and moved for a preliminary injunction nearly three months later on March 6, 2026.  (Doc. 2; Doc. 15).  The original motion did not explain this delay, and the Court could not discern a justification. (Doc. 15; Doc. 54 at 12).  Additionally, the Court emphasized that Plaintiff relied on the same evidence and facts in seeking a preliminary injunction that were available at the time it filed its Complaint.  (Doc. 54 at 12) (citing *Wreal,*

*LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248–49 (11th Cir. 2016) (holding that the district court did not abuse its discretion in finding no irreparable harm where the party seeking preliminary injunction did so several months after filing its complaint and "relied exclusively on evidence that was available" at the time it filed its complaint)). Accordingly, the Court found that the lengthy delay weighed against a finding of irreparable harm. (Doc. 54 at 11–12) (citing *Wreal,*, 840 F.3d at 1248 ("A delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm. . . . [T]he very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits.")).

Now, Plaintiff argues that the Court did not consider whether it had reasonable justification for the delay or had previously taken steps to protect its rights. (Doc. 55 at 9). For the first time, Plaintiff attempts to explain its delay. Plaintiff contends that Defendant's "renewed conduct" began on June 3, 2026, arising after the Court's Order. (*Id.*). Because the Court could not have considered a fact before it happened, this fact cannot change the Court's prior finding that Plaintiff offered no explanation for its delay. Even so, "renewed conduct" refers to Plaintiff's allegation that Defendant has made an excessive amount of fraudulent orders on Plaintiff's website beginning in January 2024, pausing in February 2026, and continuing in June 2026. (*Id.* at 3–5). These facts do not deal with Defendant's alleged use of Plaintiff's trademark; rather, they are facts relevant to Plaintiff's state court claim against Defendant for stalking and harassment. The same is true

9

for Plaintiff's argument that it took steps to protect its rights prior to seeking a preliminary injunction. The protective steps Plaintiff points to are its efforts in state court to obtain a stalking injunction against Defendant—not to protect its trademark, which is the issue before this Court. (*Id.* at 3–6, 9–10) (citing Doc. 55-12; Doc. 55-13).[4]

## CONCLUSION

After careful review of Plaintiff's motion and the entire record, the Court **DENIES** Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 55).

**ORDERED** in Tampa, Florida, on August 4, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that Plaintiff, in filing its renewed motion, has again delayed seeking relief. The Court denied Plaintiff's original motion on May 26, 2026. (Doc. 54). Almost two months later, on July 15, 2026, Plaintiff moved to reconsider. (Doc. 55). The arguments and evidence it relies on now were available before July 15, 2026. Thus, Plaintiff "inexplicably waited . . . to seek relief, which again weighs against a finding of irreparable harm." *Oviedo Med. Ctr., LLC*, 2020 WL 4218276, at *2.